UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AL OTRO LADO, INC.<br><br>511 E San Ysidro Blvd #333, San Diego, CA 92173<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>200 Independence Avenue, S.W., Washington, D.C. 20201.<br><br>*Defendant.* | Civil Action No.: 1:25-cv-2987 |

## INTRODUCTION

1. The Department of Health and Human Services (HHS), recently adopted a secret policy of allowing Department of Homeland Security (DHS) officers to interrogate unaccompanied children entrusted to HHS custody. HHS also recently adopted a secret policy of allowing DHS officers to interrogate potential sponsors of unaccompanied children.

2. Unaccompanied children have no lawful immigration status in the U.S., are under the age of 18, and are detained without a parent or legal guardian to provide care and physical custody.

3. Since 2003, unaccompanied children who are apprehended at the border or referred to HHS after coming to the attention of immigration authorities are detained in federal custody in facilities contracted by the Office of Refugee Resettlement (ORR).

4. HHS plays no role in the apprehension or initial detention of unaccompanied children and HHS is not a party to the child's immigration proceedings. By law, HHS must provide care for each

1

unaccompanied child. ORR is also required by law to hold children in the least restrictive setting possible.

5. As soon as children enter ORR care, they are put in contact with their parents, guardians, or relatives, if known, and the process of finding a suitable sponsor begins. Most sponsors are a parent or close family relative living in the United States.

6. Sponsors are required to undergo background checks and complete a sponsor assessment process that identifies risk factors and other potential safety concerns.

7. Recently, ORR began including Immigration and Customs Enforcement (ICE) agents during routine meetings with potential sponsors. During such meetings, ICE agents have asked or attempted to ask potential sponsors questions.

8. ICE agents have also sought to question children in ORR custody, outside the presence of counsel and often before counsel has been assigned to their case.

9. Incorporating ICE in routine meetings with potential sponsors, and allowing ICE to question children without an attorney present, violates HHS's statutory mandate to act in the best interest of children in its care.

10. Moreover, secretly adopting unlawful policies also violates the Freedom of Information Act ("FOIA") because Congress requires proactive disclosures of policies and other records affecting members of the public under 5 U.S.C. §§ 552(a)(1) and (a)(2).

11. Plaintiff requests that the HHS child interrogation policy, HHS polices around cooperation with ICE, and similar records be made public.

JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiff's FOIA claims for prompt access to released records under 5 U.S.C. § 552(a)(3)(A) and affirmative disclosure of certain records under 5 U.S.C. §

552 (a)(1) and (a)(2) pursuant to 5 U.S.C. § 552 (a)(4)(B), the Administrative Procedures Act, 5 U.S.C. § 701 *et. seq.*, and U.S.C. § 1331 (federal question) and 28 U.S.C. § 1391(e) (federal agency).

13. This Court has jurisdiction to enjoin the agency from withholding agency records and order production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B) ("the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.")

14. As a jurisdictional matter, FOIA only permits an agency more time to complete a request if it can show exceptional circumstances and that it has been exercising due diligence in locating and processing requested records. *See* 5 U.S.C. § 552(a)(6)(C) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.")

15. Venue is proper within this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16. Plaintiff Al Otro Lado, Inc.("AOL"), is a binational legal services, humanitarian aid, and public advocacy nonprofit organization based in Southern California and Tijuana, Mexico.

17. Defendant Department of Health and Human Services is a federal 'agency' within the meaning of FOIA.

18. The Defendant contains multiple different components including the Administration for Family Services ("ACF"). The ACF oversees the Office of Refugee Resettlement ("ORR").

By statute, HHS is charged with protecting the best interests of unaccompanied children ("UAC") placed in its care. *See* 8 U.S. Code § 1232 HHS fulfills this duty through ORR.

19. Defendant keeps the responsive records sought here in Washington, D.C.

## FACTS

20. Plaintiff brings this action to compel Defendant's compliance with its FOIA proactive disclosure obligations under § 552(a)(2) or §552(a)(1).

21. FOIA "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

22. § 522(a)(2)'s original text required federal agencies to make certain records "available for public inspection and copying" on a proactive basis.[1] § 522(a)(2) thus became known as the "reading room" provision because "agencies historically met their § 522(a)(2) obligations by placing the appropriate records in a physical, public reading room." *Animal Legal Def. Fund v. U.S. Dep't of Agriculture*, 935 F.3d 858, 862 (9th Cir. 2019). FOIA was later amended to require online publication of § 552(a)(2) records.

23. In relevant part, §552(a)(2) mandates proactive disclosure of the following categories of records:

---

[1] *See* DOJ, *Department of Justice Guide to the Freedom of Information Act* (July 23, 2014), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.pdf.

> Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—
>
> (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
>
> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public;
>
> (D) copies of all records, regardless of form or format—
>
> (i) that have been released to any person under paragraph (3); and
> (ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or
> (II) that have been requested 3 or more times; and
>
> (E) . . ."current indexes providing identifying information for the public as to any matter . . . . required by this paragraph to be made available or published . . . [including] a general index of the records referred to under subparagraph (D).

24. Because § 552(a)(2) disclosure is mandatory, D.C. Circuit precedent permits a plaintiff to bring a § 552(a)(2) claim even without having first filed a corresponding subsection (a)(3) FOIA request for those records. *See, e.g., Al Otro Lado, Inc. v. Immigration And Customs Enforcement*, 1:23-cv-01525, (D.D.C. Dec. 19, 2023) (minute order recognizing that an (a)(2) lawsuit does not require an initial FOIA request under (a)(3)) (quoting *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) ("[A] plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).").[2]

---

[2] *See also Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) ("[T]he opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and ... such requirement is judicially enforceable without further identification under Section

5

25. D.C. Circuit precedent forbids a court from ordering an agency to publish records online to fulfil its § 552(a)(2) obligations.[3]

26. However, nothing "prevents a district court from, consistent with section 552(a)(4)(B), ordering an agency to provide to the plaintiff documents covered by the reading-room provision."[4]

27. § 552(a)(2) governs the publication of only some agency policies or rules. The other proactive disclosure provision governing agency policy publication is § 552(a)(1), which requires Federal Register publication of certain records, including:

> (C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;
> (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and
> (E) each amendment, revision, or repeal of the foregoing.

28. § 552(a)(1) also has an enforcement provision barring use of an unpublished record against a member of the public: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."

29. Defendant's unpublished records currently remain secret. FOIA demands publication of those records under one of the two proactive disclosure provisions. However, until

---

552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2).")
[3] *Id.* at 1243 (D.C. Cir. 2017) ("Given *Kennecott's* construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency "make available for public inspection" documents subject to the reading-room provision . . .").
[4] *Id.*

the records are made public, it cannot be determined whether the proper proactive disclosure provision is § 552(a)(1) or § 552(a)(2).

- A. *Defendant has blocked public access to its online FOIA reading room, in violation of § 552(a)(2).*

30. Defendant maintains a separate online FOIA reading room dedicated to ACF records, including ORR records, the ACF "Electronic Reading Room," https://acf.gov/e-reading-room.

31. That online FOIA reading room must contain all ACF § 552(a)(2) records, including ORR records, with an appropriate index.

32. Defendant has failed to publish all § 552(a)(2) records.

33. There is no appropriate § 552(a)(2) index of reading room records that would permit the public to know where each category of proactive disclosure records can be found.

34. Other records can not be accessed. For example, clicking on the ACF reading room link for policy documents leads to a web page with no records and a statement that "Access to this page is restricted."[5]

35. Defendant also maintains a separate webpage named the ACF "Resource Library."[6] This resource library contains a different subset of proactive disclosure records. The ACF Electronic Reading Room contains no links to the ACF Resource Library.

- B. *Defendant secretly adopted a covert policy of allowing ICE agents to interrogate unaccompanied children and their potential sponsors.*

---

[5] Administration for Children and Families, "Policy Documents," https://acf.gov/policy-documents (last accessed August 22, 2025).
[6] Office of Refugee Resettlement, "Resource Library," https://acf.gov/orr/resource-library?f%5B0%5D=type%3Apolicy_and_guidance (last accessed August 22, 2025).

36. Defendant adopted a policy of permitting Department of Homeland Security officers to interrogate unaccompanied children in the care of ORR without updating the reading room or making a public statement regarding the policy change. *See* Attachment #1.

37. In an August 5, 2025 email, sent at 6:48 pm EST and titled "New UAC Initiative for Action," an attorney at the Office of the Principal Legal Advisor ("OPLA") for ICE described a new collaboration between ICE and ORR. Under this partnership, ICE officers are permitted to interrogate unaccompanied children ("UAC") and their sponsors as part of the ORR sponsor vetting process. These interrogations occur while the child is in "federal custody" and without *Miranda* warnings. The email correctly recognized that Congress requires HHS to "ensure, to the greatest extent practicable . . . that all [UAC] who are or have been in the custody of [HHS] . . . have counsel to represent them" under 8 U.S.C. § 1232(c)(5) and that some of the children to be interrogated by HSI are represented by counsel. But the children's attorneys would not be permitted to attend these interrogations. The email claimed that "HSI's purpose for conducting the interrogations was to promote 'family reunification'" without articulating how such a policy would promote such unification.

38. HSI is not part of ORR or HHS. HSI is a criminal law enforcement organization pledged to "Fighting Global Threats, Protecting American Lives." It does this by "stopping criminals. We identify, disrupt and shut down their illegal networks. We seize their money and their assets to keep them from breaking the law again. Our agents arrest criminals and work with prosecutors to provide justice to their victims."[7]

---

[7] United States Department of Homeland Security, Immigration and Customs Enforcement, "Homeland Security Investigations: Who We Are," https://www.ice.gov/about-ice/hsi (last accessed August 22, 2025).

39. Unaccompanied children should not be treated like criminals. Many of them have suffered trauma, abuse, and persecution in their home countries. According to ORR, caring for and reuniting children with their families or sponsors takes "an experienced team of competent, hardworking individuals dedicated to the welfare of the children."[8]

40. The published ORR policy "5.10.2 Limits to Sharing Information with DHS and EOIR" places very strict limitations on sharing UAC information with DHS, barring information sharing under most circumstances. This policy was adopted because "House Report 116-450, which accompanies the Consolidated Appropriations Act, 2021, directs ORR to restrict sharing certain case-specific information with the Executive Office for Immigration Review (EOIR) and DHS that may dissuade a child from seeking legal relief through due process with their legal service provider or may bias the court and unfairly influence issuance and length of continuances."[9]

41. Thus, ORR appears to be violating its own internal policies in having adopted a policy of permitting HSI to interrogate unaccompanied children and their potential sponsors..

42. Nowhere in HSI's mission statement is there any indication that it has been tasked with helping reunify separated families.

43. In violation of § 552(a)(2), HHS has not published a policy describing their cooperation with HSI's interrogation of unaccompanied children.

44. Likewise, ICE has not published its policy of interrogating unaccompanied children for the purposes of "family reunification."

---

[8] *See* Office of Refugee Resettlement, "Unaccompanied Alien Children Bureau Fact Sheet," https://acf.gov/orr/fact-sheet/programs/uc/fact-sheet (last accessed August 22, 2025).
[9] Office of Refugee Resettlement, "Unaccompanied Children Bureau Policy 5.10.2: Limits to Sharing Information with DHS and EOIR," https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-5#5.10.2 (last accessed August 22, 2025).

45. In the alternative, Defendant has improperly failed to publish the responsive records in the Federal Register, as required by § 552(a)(1).

   *C. Defendant has ignored Plaintiff's FOIA notification requesting the correction of Defendant's deficient reading room and the publication of child interrogation policies.*

46. On August 5, 2025, at 7:37 pm EST, Plaintiff sent Defendant's FOIA public liaison officer an email. *See* Attachment #2. The email noted the "lack of any published ORR policies, staff manuals, or instructions, pertaining to the recently adopted practice of collaborating with ICE and other law enforcement organizations." The email also noted that "ORR makes no policies available on its online ACF FOIA reading room" and that the "HHS FOIA reading room appears generally deficient," representing "HHS as having only two public policies."

47. Plaintiff requested that Defendant respond by the end of that week, August 8, 2025, and noted that a §552(a)(2) suit did not require an initial (a)(3) request before suit could be filed.

48. Plaintiff then submitted this same email notification to the HHS online FOIA portal. HHS marked the email notification as having been received by both HHS offices and numbered it as #2025-03512-FOIA-OS and #2025-03513-FOIA-PHS.

49. Defendant has not responded or acknowledged receipt of the email.

50. ICE has failed to publish any corresponding records describing its collaboration with Defendant, whether in its reading room or in the Federal Register.

51. All attachments are incorporated by reference.

# CLAIMS

## COUNT I: VIOLATIONS OF 5 U.S.C. § 552(a)(2)

52. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

53. As described previously, Congress requires mandatory online publication of certain agency records under § 552(a)(2).

54. Plaintiff notified Defendant that it has failed to properly publish § 552(a)(2) records to the appropriate online reading room.

55. In particular, Plaintiff notified Defendant that there were no § 552(a)(2) records describing ORR's new of collaborating with ICE.

56. Under § 552(a)(2), Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to disclose to Plaintiff all § 552(a)(2) records, including final agency orders and opinions, policies not otherwise published in the Federal Register, staff manuals and communication or instructions to staff.

57. Alternatively, Defendant may voluntarily publish these same records to its online FOIA reading room in an appropriately indexed manner.

## COUNT 2: VIOLATIONS OF 5 U.S.C. § 552(a)(1)

58. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

59. As described previously, Congress requires mandatory Federal Register publication of certain agency records under § 552(a)(1).

60. At this time, it is unclear whether the responsive records in this case should be published under § 552(a)(1) or § 552(a)(2).

61. Defendant has failed to properly publish responsive records under either subsection, having not published the records in its online reading room or in the Federal Register.

62. Thus, under § 552(a)(1), Plaintiff is entitled to to declaratory and injunctive relief requiring Defendant to properly publish any responsive records covered by § 552(a)(1) in the Federal Register, if it can do so consistent with the Administrative Procedures Act.

## CLAIMS FOR RELIEF

1. Enter judgment on all counts in favor of Plaintiff and against Defendant.

2. Determine whether Defendant was required to publish the responsive records under § 552(a)(1) or § 552(a)(2).

3. Declare Defendant's withholding of responsive records, whether those records fall within § 552(a)(1) or (a)(2), unlawful and order Defendant to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all responsive records, including all final agency orders and opinions, policies not otherwise published in the Federal Register, staff manuals and instructions, and other records.

4. Declare that any previously unpublished records either cannot be used to adversely affect a member of the public, as described in § 552(a)(1), or, under § 552(a)(2), that any unpublished record affecting "a member of the public may [not] be relied on, used, or cited as precedent by an agency against a party other than an agency" absent actual and timely notice to the affected party.

5. Award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6. Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Respectfully submitted this September 3, 2025.

<u>/s/ Andrew Fels</u>
Andrew Fels
TN0025 (TN 36005)
*Al Otro Lado*
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025 the foregoing was filed electronically through ECF/CM. On this same date, electronic service will be made to all counsel of record through the Court's ECF/CM system.

/s/ Andrew Fels
Andrew Fels
TN0025 (TN 36005)
*Al Otro Lado*
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com